IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HEART TO HEART HOSPICE OF TEXAS LTD, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:23-cv-02704-X |
| ROBERT F. KENNEDY, JR., *in his official capacity as Secretary, United States Department of Health and Human Services*,[1] | § § § § § § | (Consolidated with 3:23-CV-2707-X, 3:23-CV-2711-X, 3:23-CV-2714-X, 3:24-CV-0032-X, 3:24-CV-0034-X, 3:24-CV-0035-X, and 3:24-CV-0036-X) |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are eight Motions to Compel Completion of the Administrative Record (ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103) brought by Plaintiffs Heart to Heart Hospice of Texas Ltd. and Heart to Heart Hospice of Fort Worth, LLC.[2] The District Judge referred these Motions to the undersigned for determination. *See* Order (ECF No. 107). Having reviewed the Parties' briefing and the applicable law, the Court **DENIES** Plaintiffs' Motions.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), where a public officer is a named party in their official capacity, their successor is automatically substituted as the named party. Robert F. Kennedy Jr. succeeded Xavier Becerra as the Secretary of Health and Human Services on February 13, 2025.

[2] Plaintiffs are wholly owned subsidiaries of Heart to Heart Hospice Holdings, LLC, a holding company of established hospice providers throughout Texas, Indiana, and Michigan. *See* Compl. ¶¶ 2–4 (ECF No. 1)

## Background

This consolidated action arises out of administrative determinations in favor of Defendant, the Secretary of the United States Department of Health and Human Services (HHS). Plaintiffs—Texas-based hospice providers—assert federal due process claims related to Defendant's extrapolated overpayment demands following audits of Plaintiffs' Medicare claims. *See generally* Compl. (ECF No. 1).[3] Plaintiffs ultimately appealed these overpayment demands through the administrative appeals process, receiving favorable decisions in some, but not all the individual appeals. *See, e.g., id.* ¶¶ 224–64.

Plaintiffs move to compel completion of the Administrative Record for the administrative decisions under review. *See* ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103.[4] Defendant argues that the Court lacks jurisdiction over Plaintiffs' claims and

---

[3] There are eight live complaints on file—one for each of the consolidated cases. *See, e.g.,* ECF Nos. 1, 39, 40, 41. Plaintiffs have not suggested or argued that the allegations in any particular live pleading are inconsistent such that any of these Motions should be treated differently than any other. To the contrary, and as discussed in note 4, *infra*, Plaintiffs' counsel represented that the Court's resolution of the legal issues in any Motion will determine the outcome for all eight Motions. The Court has reviewed the live pleadings but has identified no distinctions relevant to its resolution of the pending Motions—in fact, many of the allegations are identical. Accordingly, the Court cites only to Heart to Heart of Texas Ltd.'s Complaint in 3:23-cv-02704-X (ECF No. 1), for convenience.

[4] As Plaintiffs note, "[t]he eight Motions to Compel Completion of the Administrative Record . . . all present the same legal issues; consequently, how this Court rules on these legal issues will determine the outcome of all eight Motions to Compel now pending before this Court." Br. Mot. Compel 9 (ECF No. 69). Accordingly, the Court will cite to Plaintiffs' brief in support of the first Motion to Compel, for convenience. Additionally, Defendant's legal arguments in each of its separate Responses are substantively identical and will therefore be addressed

that the administrative record is complete. *See* ECF Nos. 122, 123, 124, 125, 126, 127, 128, 129. The Motions have been fully briefed and are ripe for determination.

A. <u>Medicare Provider Appeals</u>

Plaintiffs are enrolled as providers in the Medicare program, which is administered by Centers for Medicare & Medicaid Services (CMS), a federal agency within HHS. *See, e.g.*, Compl. ¶¶ 9–11 (ECF No. 1). Defendant has delegated to CMS authority to determine whether Medicare covers particular medical services. *See id.* ¶¶ 11–12, 62. CMS processes over a billion claims annually. And because it is not feasible to pre-audit all the claims submitted, CMS operates on an "honor system," whereby CMS pays providers first, subject to the right to audit those payments later. *See id.* ¶¶ 62–63; Resp. 3–4 (ECF No. 122).

CMS contracts with third-party Medicare Administrative Contractors (MACs) to administer claims and manage operational aspects of the Medicare Program. *See* Compl. ¶¶ 53, 61 (ECF No. 1); Resp. 3 (ECF No. 122). And MACs, in turn, utilize contractors known as Unified Program Integrity Contractors (UPICs) to conduct post-payment audits to identify fraud and waste. *See* Compl. ¶¶ 63–70 (ECF No. 1). In an audit, a UPIC typically reviews a random sample of the provider's Medicare claims over a certain period and calculates an error rate (*i.e.*, the percentage of claims that were improperly paid) based on that review. *See* 42 U.S.C. § 1395ddd(f)(8). If the error rate is sustained or high enough, the UPIC

---

together. *See* ECF Nos. 122, 123, 124, 125, 126, 127, 128, 129. For clarity, when citing the Responses, the Court will cite to the first Response, ECF No. 122.

extrapolates that error rate across the provider's other Medicare claims to determine the total overpayment. *See* 42 U.S.C. § 1395ddd(f)(3). If the provider disputes the UPIC's initial determination regarding overpayment, it can follow a four-step administrative appeal process:

1. Redetermination. The provider can seek redetermination by the MAC. Compl. ¶¶ 132–133 (ECF No. 1); 42 U.S.C. § 1395ff(a)(3). A redetermination is "considered to be part of the initial determination." 42 U.S.C. § 1395ff(a)(3)(D).

2. Reconsideration. If the redetermination is unfavorable, the provider can then seek reconsideration by a different contractor, a Qualified Independent Contractor (QIC), which can consider additional evidence. *See* Compl. ¶¶ 134–136; 42 U.S.C. §1395ff(c)

3. Administrative Law Judge Hearing. A party that is dissatisfied with the QIC's reconsideration can request a hearing by an Administrative Law Judge (ALJ). Compl. ¶ 137; 42 U.S.C. §1395ff(d)(1). The ALJ issues a decision based on evidence presented at the hearing or otherwise admitted into the administrative record. 42 C.F.R. § 405.1046(a)(1).

4. Medicare Appeals Council Review. A provider can appeal from the ALJ's decision to the Medicare Appeals Council of HHS. *See* Compl. ¶¶ 140–141; 42 U.S.C. § 1395ff(d)(2)(A). The Council has 90 days to issue a decision, which becomes the final decision of the Secretary. 42 U.S.C. § 1395ff(d)(2). If the Council does not issue a decision within the 90-day period, the provider can file suit to obtain judicial review, in which case the ALJ decision becomes the Secretary's final decision. 42 U.S.C. § 1395ff(d)(3)(B); 42 U.S.C. § 1395ff(b)(1)(A); Compl. ¶¶ 143–145.

Plaintiffs allege they filed this action "after receiving a final decision of the Secretary denying coverage of [their] Medicare claims and affirming the extrapolated overpayments." *See, e.g.*, Compl. ¶ 18 (ECF No. 1).

4

B. The Administrative Record

By their Motions, Plaintiffs assert that the following four categories of documents are necessary to "complete" the Administrative Record:

1. eight "target universes" containing "zero-paid claims";

2. eight sets of documents used by the agency in recalculating overpayment demands after favorable adjudications of individual claims;

3. accounting records related to the eight overpayment demands showing alleged debts paid by Plaintiffs as well as interest owed to Plaintiffs for amounts withheld and refunded; and

4. other documentation associated with the statistical samplings and extrapolations, recalculations, or accounting.

*See, e.g.*, Mots. Compel 2 (ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103); Consol. Reply 9 (ECF No. 134). The Target Universes and certain "Findings Letters" were created by UPICs in initially assessing Plaintiffs' overpayment disputes. *See* Mots. Compel at 2 (ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103); Br. Mot. Compel 9–10 (ECF No. 69); Compl. ¶ 196 (ECF No. 1); Consol. Reply 9 (ECF No. 134). The remaining documents appear to have been created by a UPIC or the MAC following determinations from agency decision makers regarding Plaintiffs' administrative appeals. *See, e.g.*, Consol. Reply 9 (ECF No. 134).

**Legal Standards**

A. Completion Versus Supplementation of the Administrative Record

A motion to complete the administrative record seeks to add evidence that the agency actually considered but failed to include, while a motion to supplement

5

the record seeks the admission of evidence outside the record that the agency did not consider. *See Skoro Ent., LLC v. Becerra*, No. 3-24-CV-433-B (BK) (N.D. Tex. Jul. 18, 2025) (Toliver, J.), Order at 4 (ECF No. 47) (citing *Texas Gen. Land Off. v. Biden*, No. 7:21-CV-00272, 2023 WL 2733388, at *1 (S.D. Tex. Mar. 31, 2023)).

When a party seeks to compel completion of the administrative record, it must demonstrate that there is a "reasonable basis to believe that materials considered by the agency decisionmakers are not in the record." *City of Dallas, Tex. v. Hall*, No. CIV.A. 307CV0060-P, 2007 WL 3257188, at *8 (N.D. Tex. Oct. 29, 2007) (Solis, J.). This requires more than just alleging that the record is incomplete. *Id.* Instead, a party must provide "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record." *Id.* To prove that the record designated by the agency is incomplete, a party must "clearly set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *See BBX Cap. Corp. v. Fed. Deposit Ins. Corp.*, No. 17-62317-CIV, 2018 WL 6531601, at *1 (S.D. Fla. Aug. 15, 2018) (citing *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). Completion of the record may be granted only if additional materials "were actually considered by the agency, yet omitted from the administrative record." *BBX Cap. Corp.*, 2018 WL 6531601, at *1 (citation omitted).

In contrast, a motion to supplement the administrative record argues that the court should consider extra-record evidence on top of the record that the

agency decision makers considered. *See Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *1 (N.D. Tex. July 19, 2021) (Kacsmaryk, J.). "Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Id.* (quoting *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010)). Indeed, "[m]atters not considered by the agency are generally outside the record, are legally irrelevant, and therefore not discoverable." *Id.* at *4. Although deviation from the record rule is limited, supplementation may be appropriate when:

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain action so as to frustrate judicial review.

*Texas*, 2021 WL 4552547, at *1. (cleaned up). Additionally, supplementation may be allowed where extra-record documents are "necessary" for the court "to resolve any statutory or constitutional contention that the agency did not, or cannot, decide." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 23–24 (2000).

B. Standard of Review under the Medicare Act (42 U.S.C. § 405(g))

Although the Medicare Act refers to the "Commissioner of Social Security," its provisions apply to the Secretary of HHS as well. *See* 42 U.S.C. § 1395ff(b)(1)(A) ("[A]ny reference to the 'Commissioner of Social Security' or the "Social Security

Administration' . . . shall be considered a reference to the 'Secretary' or the 'Department of Health and Human Services,' respectively."). The Medicare Act provides that the decision of the Secretary must be upheld if "supported by substantial evidence." 42 U.S.C. § 405(g). Section 405(g) sets forth the standard for judicial review of a "final decision" of the Secretary. *Id.* Such review must be based on "a certified copy of the transcript of the record[,] including the evidence upon which the findings and decisions complained of are based," to be filed by the Secretary. *Id.* This statute also allows additional evidence to be included in the administrative record if a party can show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* If the standard for additional evidence is met, then the Court may remand to the Secretary "for further action." *Id.*

C. Standard of Review under the APA

The Parties disagree on which section of the APA defines the administrative record in this case. Defendant argues that, because Plaintiffs seek judicial review of formal agency adjudications, the administrative record is defined by 5 U.S.C. § 556(e), and thus "[t]he transcript of testimony and exhibits, together with all papers and requests filed in the proceeding," constitute the exclusive administrative record. *See* Resp. 25 (ECF No. 122). Plaintiffs argue, however, that § 706 of the APA defines the administrative record in this case. *See* Br. Mot. Compel 1, 2, 10 (ECF No. 69). Under § 706, the record consists of "all documents and materials that the agency 'directly or indirectly considered' and nothing more

8

or less." *BBX Cap. Corp.*, 2018 WL 6531601, at *1 (quoting *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006)) (cleaned up). This includes evidence contrary to the agency's decision. *See Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (Higginbotham, J.) (citations omitted). On the other hand, "matters not considered by the agency are generally outside the record, are legally irrelevant, and therefore not discoverable.*" City of Dallas, Tex.*, 2007 WL 3257188, at *4 (Solis, J.) (citing *Exxon Corp.*, 91 F.R.D. at 33).

Under either section, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Texas General Land Office*, 2023 WL 2733388, at *1 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). And "where an agency has presented a certified copy of the complete administrative record, 'the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.'" *City of Dallas, Tex.*, 2007 WL 3257188, at *8 (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). The presumption of administrative regularity in the designation of the record is "strong." *See Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 260–61 (D.D.C. 2013) (quoting *Pacific Shores Subdivision, California Water Dist.*, 448 F. Supp. 2d at 5).

## Analysis

A.  The Court has jurisdiction to address the Plaintiffs' Motions.

Defendant argues that the Court lacks jurisdiction to adjudicate Plaintiffs' Motions. Resp. 15–19 (ECF No. 122). As Defendant correctly notes, § 405 limits the power of federal courts to hear claims arising under the Medicare Act. *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 475 (5th Cir. 2022) (citing 42 U.S.C. 405(g)). First, § 405(h) "strips the district courts of the most obvious sources of federal jurisdiction" for claims under the Medicare Act" and "'channels' the class of available claims 'into § 405(g).'" *See id.* Section 405(g), "in turn, grants jurisdiction to district courts to review final agency decisions made after a hearing." *Id.*

Section 405(g) "contains two separate elements: first, a jurisdictional requirement that claims be presented to the agency, and second, a waivable requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id.* (quoting *Smith v. Berryhill*, 587 U.S. 471, 476–477 (2019)). The requirements of § 405 apply to claims arising under the Medicare Act through 42 U.S.C. § 1395ff(b)(1)(A), which provides that an "any individual dissatisfied with any initial determination . . . shall be entitled . . . to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g)." 42 U.S.C. § 1395ff(b)(1)(A).

Defendant does not dispute that the extrapolated overpayment demand was an initial determination. *See* Resp. 17 (ECF No. 122). Rather, Defendant argues

that Plaintiffs did not raise "statistical sampling or extrapolation issues" in their appeals and that ALJs "repeatedly noted" their lack of jurisdiction over these issues. *Id.* at 16–17 (ECF No. 122). Thus, Defendant argues that this court lacks jurisdiction to consider issues related to statistical sampling and extrapolation under 405(g) because those issues were not considered or decided by agency decision makers. *See id.* at 17–19.

But the Fifth Circuit and the Supreme Court have identified circumstances in which a particular contention that was not strictly presented or exhausted through the administrative process was reviewable under § 405(g). *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 475 (5th Cir. 2022) (citing *Illinois Council*, 529 U.S. at 19–20, 23). "In *Illinois Council*, the [Supreme Court] acknowledged that certain contentions relevant to the action arising under the Medicare Act are reviewable by the courts, even if those contentions themselves were not subject to a hearing." *Id.* (cleaned up) (citing *Illinois Council*, 529 U.S. at 23). The Supreme Court went on to say:

> The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve *any statutory or constitutional contention that the agency does not, or cannot, decide*, including, where necessary, the authority to develop an evidentiary record.

*Id.* (quoting *Illinois Council*, 529 U.S. at 23–24 (2000)) (noting first emphasis in original, second emphasis added by the Fifth Circuit). Thus, the Court "must focus on the *action* arising under the Medicare Act and not on other related 'contentions.'" *See id.*

Defendant asserts that the issues of statistical sampling and extrapolated overpayment were not raised or considered during the administrative appeals process. *See* Resp. 15–16 (ECF No. 122). Plaintiffs, however, allege that these issues were raised in appeals before various ALJs. *See, e.g.*, Compl. ¶¶ 247, 249, 251, 252 (ECF No. 1). Even so, whether these particular contentions were raised is not dispositive of the threshold question. Instead, the question is whether Plaintiffs have "channeled" their actions through the appropriate administrative process, thereby authorizing judicial review.

Indeed, where an action is appropriately channeled through the agency, the Court has the authority to review "*any* statutory or constitutional contention that the agency *does not, or cannot,* decide." *D&G Holdings, L.L.C.*, 22 F.4th at 475–76. This includes the authority to "develop an evidentiary record" to resolve this dispute, if necessary. *See id.* at 476 n.7 (noting that where claims are "inextricably intertwined with a claim for benefits," they cannot be divorced for purposes of federal question jurisdiction). Defendant does not dispute that Plaintiffs have obtained final agency determinations with respect to the underlying overpayment demands. *See* Resp. 17 (ECF No. 122). Thus, Plaintiffs have sufficiently channeled their actions through the appropriate administrative process. The Court is not

deprived of authority to review Plaintiffs' due process claims simply because those contentions were not decided by the Defendant. And with respect to any alleged due process violations occurring after agency decisions were rendered, such conduct related to "effectuations" which were inextricably intertwined with the initial exhausted agency actions. *See D&G Holdings, L.L.C.*, 22 F.4th at 476–77. Accordingly, this Court has jurisdiction to adjudicate Plaintiffs' Motions.

   B.   Plaintiffs' Motions fail under the Medicare Act and the APA.

   The Parties disagree on the applicable legal standards governing Plaintiffs' Motions. Plaintiffs assert that only the Administrative Procedure Act (APA) applies, arguing that the Medicare Act, § 405(g), provides "no express mechanism or legal standard for completing the administrative record." Br. Mot. Compel 13 (ECF No. 69). Defendant argues that Plaintiffs' Motions are exclusively reviewable under the Medicare Act, and that § 405(g) restricts the court to the existing administrative record presented to agency decision makers. *See* Resp. at 22–23 (ECF No. 122). The Parties acknowledge that neither the Fifth Circuit nor district courts within this Circuit have decided which standard applies. *See id.* at 2; Br. Mot. Compel 14 (ECF No. 69) And those few courts in other Circuits that have addressed the question are divided. *See* Resp. 2; Br. Mot. Compel 14. This Court need not decide which standard applies because Plaintiffs' Motions fail under both the Medicare Act and the APA.

13

i.  The Documents to be Added

The administrative record filed by the Secretary comprises 57 separate volumes and includes hundreds of thousands of pages, including dozens of audio files and spreadsheets. *See* Index (ECF No. 45). By their Motions, Plaintiffs seek inclusion of the following four categories of documents into the record:

1. eight "target universes" containing "zero-paid claims";

2. eight sets of documents used by the agency in recalculating overpayment demands after favorable adjudications of individual claims;

3. accounting records related to the eight overpayment demands showing alleged debts paid by Plaintiffs as well as interest owed to Plaintiffs for amounts withheld and refunded; and

4. other documentation associated with the statistical samplings and extrapolations, recalculations, or accounting.

*See generally*, ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103; Consol. Reply 9 (ECF No. 134). Except for certain UPIC Findings Letters, Plaintiffs do not assert that any of these documents were considered by the ALJs or the Medicare Appeals Council in connection with their appeals of the overpayment demands. *See* Br. Mot. Compel 7 (ECF No. 69). Thus, although Plaintiffs style their Motions as seeking "completion" of the administrative record, virtually all the documents sought to be added are extra-record evidence which would "supplement" the existing record filed in this case. *See id.*

First, Plaintiffs move to admit documents purportedly containing statistical data used to initially calculate the overpayment demands. *See, e.g.*, Mot. Compel 2 (ECF No. 68). Specifically, Plaintiffs assert that the "Target Universes" are

14

incomplete because they do not include "all zero-paid claims." *See* Br. Mot. Compel 1, 23 (ECF No. 69). Plaintiffs define "zero-paid claims" as claims which "are fully adjudicated claims for which the payment amount was zero." *See* Compl. ¶ 183 (ECF No. 1). But the universe of claims need not include zero-paid claims. Instead, "[t]he universe shall consist of all fully and partially paid claims submitted by the provider." Medicare Program Integrity Manual (MPIM) Ch. 8 § 8.4.3.2.1 (Pub. No. 100-08, Rev. 377) (2011);[5] *see also* Compl. ¶ 185 (citing the MPIM). A "zero-paid claim" is neither a fully nor partially paid claim because no payment was made whatsoever. Indeed, the Medicare Appeals Council has consistently held that zero-paid claims "can and should be excluded from the sample because the MPIM contemplates and allows that a valid statistical sample may *exclude* underpayments and zero payments without affecting sample validity." *See Compass Lab'y Servs., LLC v. Becerra*, No. 2:22-CV-2770-SHL-ATC, 2024 WL 1289696, at *5 (W.D. Tenn. Mar. 26, 2024) (quoting *Open Arms Home Care, Inc.*, No. M–11–2605, 2013 WL 8913143, at *12 (Medicare Appeals Council Sept. 17, 2023)) (emphasis added and internal quotation marks omitted). Although the Fifth Circuit has not spoken on this issue, another judge in this District, as well as four other district courts, have rejected similar attempts to admit zero-paid claims data into the administrative record.[6] The Court finds these opinions to be well-

---

[5] The MPIM is a detailed manual issued by CMS containing guidance on audits, sampling, and overpayment extrapolations. MPIM Ch. 8 § 8.4.1.2.

[6] *See Skoro Ent., LLC v. Becerra*, No. 3-24-CV-433-B (BK) (N.D. Tex. Jul. 18, 2025) (Toliver, J.) (collecting cases and refusing to admit recalculation data and zero-

reasoned, and Plaintiffs' briefing does not attempt to distinguish these cases or explain why their reasoning should not be applied here. *See generally* Consol. Reply (ECF No. 134) (not addressing the cases raised by Defendant). Plaintiffs also allege that, in several administrative hearings, the ALJs "refused to address" the statistical sampling methodology (*i.e.*, the exclusion of zero-paid claims) during the appeal process. *See, e.g.*, Compl. ¶¶ 249, 251 (ECF No. 1). As Defendant notes, however, another district court has found such an assertion to be "logically inconsistent" with the agency having actually considered these materials. *See* Resp. 24 (ECF No. 122) (citing *Ashli Healthcare, Inc.*, 2024 WL 3890104, at *2).

---

paid claims under either the APA or the Medicare Act); *Calvary Hosp., Inc. v. Becerra*, 762 F. Supp. 3d 360 (S.D.N.Y. 2025), *objections overruled sub nom. Calvary Hosp., Inc. v. Kennedy*, No. 1:23-CV-8479-GHW, 2025 WL 2106156 (S.D.N.Y. July 25, 2025) (denying plaintiff's request to supplement administrative record with several documents, including the "universe" of claims); *Compass Laboratory Services, LLC*, 2024 WL 1289696 (affirming agency's exclusion of zero-paid claims in administrative record); *MedEnvios Healthcare, Inc. v. Becerra*, No. 1:23-CV-20068, 2023 WL 9692087 (S.D. Fla. Nov. 27, 2023), *aff'd sub nom. MedEnvios Healthcare, Inc. v. United States Dep't of Health & Hum. Servs.*, No. 23-20068-CIV, 2024 WL 551837 (S.D. Fla. Feb. 12, 2024) (declining plaintiff's motion to compel completion of the administrative record because it sought to obtain materials never considered by the ALJ and was designed to convince the court "that the contractors used a flawed statistical protocol for their calculations," which was best suited for a merits-based motion); *Ashli Healthcare, Inc. v. Becerra*, No. 1:23-CV-01443 WBS BAM, 2024 WL 3890104 (E.D. Cal. Aug. 21, 2024) (denying plaintiff's motion to compel completion of the administrative record because it failed to provide clear evidence to overcome the presumption of regularity); *but see Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-CV-03932-DCN, 2024 WL 942918, at *9–11 (D.S.C. Mar. 5, 2024) (granting motion to compel competition of administrative record).

Second, with respect to recalculation data, Plaintiffs seek to add documents related to UPIC's "recalculation of the alleged overpayment(s) following the favorable redetermination, reconsideration, and ALJ decisions." *See e.g.*, Mot. Compel 2 (ECF No. 68). But, as is evident from Plaintiffs' description of these documents, such documents are relevant to the recalculation process after favorable rulings were made. *See id.*; *see also* Br. Mot. Compel 26 (ECF No. 69). And "matters not considered by the agency are generally outside the record, are legally irrelevant, and therefore not discoverable." *City of Dallas, Tex.*, 2007 WL 3257188, at *4.

Third, Plaintiffs seek to include certain accounting records "to determine whether the Secretary's current overpayment demand(s) . . . were calculated correctly." *See* Br. Mot. Compel 9, 30 (ECF No. 69). But as with the recalculation data, Plaintiffs do not suggest that these records were considered during the administrative appeals process. *See id.* Instead, Plaintiffs assert that they were not provided these documents until after the administrative decisions were rendered. *See id.*

Fourth, Plaintiffs seek inclusion of various other documents which are purportedly necessary to "help the Court resolve" their constitutional claims. *See* Br. Mot. Compel 31–32 (ECF No. 69). This category of documents also includes certain "Qlarant Findings Letters" purportedly issued by a UPIC, which detail the initial findings related to the overpayment demands as well as "Notice of Termination" letters. *See id.* at 10. Plaintiffs assert that these documents were not

17

included in the administrative record but were created and relied upon by a UPIC. *See id.* at 10, 31–32. Defendant argues that such documents were "generated after the ALJ decisions were issued" and that such documents were not considered by agency decision makers. Resp. 24 (ECF No. 122).

### ii.    Plaintiffs' Motions fail under the Medicare Act.

Plaintiffs argue that § 405(g) provides "no express mechanism or legal standard" for completing the administrative record where evidence has been omitted. *See* Br. Mot. Compel 13 (ECF No. 69). Although Plaintiffs assert that "several courts" have acknowledged this fact, Plaintiffs cite only one case from the District of South Carolina. *Id.* at 13 n.9 (citing *Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-CV-03932-DCN, 2024 WL 942918 (D.S.C. Mar. 5, 2024)). Defendant, however, points to five cases, including one from a judge in this District, applying the standards of § 405(g) to motions to complete the administrative record. *See* Resp. 19–22 (ECF No. 122). Without deciding whether this standard is the exclusive means for completing the record, the Court finds the cases cited by Defendant are persuasive and will apply § 405(g) to Plaintiffs' Motions.

Section 405(g) provides an "on point" definition of what the administrative record is when a court reviews a decision by the Secretary. *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 78 (2d Cir. 2006). The default "record" is the "closed administrative record" that the Secretary certifies to the Court when a party seeks judicial review of the Secretary's determination. *See Mathews v. Weber*, 423 U.S.

18

261 (1976). Section 405(g) provides that, as part of the Secretary's "answer" to a party seeking judicial review of its determination, the Secretary "shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). The reviewing court makes its decision "upon the pleadings and the transcript of the record" certified by the Secretary. *Id.* Once the record is filed, additional evidence may only be taken upon remand to the Secretary and "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*[7] Thus, Section 405(g) specifies what constitutes the administrative record and provides a mechanism to add to that record.

---

[7] Although Plaintiffs assert that § 405(g) does not apply—in their Reply, Plaintiffs argue that, upon finding that the administrative record is incomplete, § 405(g) presents the Court with a choice: either (i) remand to the Secretary, or (ii) order the additional evidence into the record. *See* Consol. Reply at 8–9 (ECF No. 134). But Plaintiffs' reading is not supported by § 405(g)'s plain text; In short, if the Court finds that additional evidence should be included in the record, § 405(g) requires that the Court remand for such evidence to "*be taken before the Secretary.*" *See id.* (emphasis added). The sentence immediately following confirms this reading, providing that *"after the case is remanded"* the Secretary shall hear "*such additional evidence,*" modify or affirm its prior decision, and file "such additional or modified findings" with the Court. *See id.* (emphasis added); s*ee also Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) ("Specific words within a statute may not be read in isolation of the remainder of that section or the entire statutory scheme.") (cleaned up); *King v. St. Vincent Hosp.*, 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context."). Thus, the Medicare Act requires remand where additional evidence is to be added to the record.

Plaintiffs do not seek remand to the Secretary. And Plaintiffs do not argue that, under the Medicare Act, "there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record." *See* Br. Mot. Compel 11–13 (ECF No. 69) (arguing that § 405(g) does not apply to the Motions and only briefing the Motions under the standards in the APA).

Furthermore, the Secretary's certification of the record is entitled to a presumption of regularity, which is not rebutted absent "clear evidence to the contrary." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). To rebut this presumption, a movant must show that the materials sought to be added were before agency decision makers. *See Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (recognizing that "before agency decision makers" means documents that were actually considered and noting that "interpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency . . . would render judicial review meaningless."). Plaintiffs point to nothing in the record demonstrating that any of these documents were considered, reviewed, relied on, or "before" an ALJ or the Medicare Appeals Council. The mere existence of these documents is not "clear evidence" that such documents were "before" agency decision makers. *See id.* ("To rebut the presumption of administrative regularity, [a plaintiff] must show that the materials sought to be added were *before* the agency decision maker. It is not enough to show that these materials were somewhere within the agency, because 'interpreting the word "before" so broadly as to encompass any potentially

relevant document existing within the agency . . . would render judicial review meaningless."). And, as Plaintiffs tacitly concede, many of these documents were not created until after the agency decisions were rendered. *See, e.g.*, Br. Mot. Compel 26 (arguing that the record is missing documents from "after the favorable redetermination, reconsideration, and ALJ decisions"); Br. Mot Compel 27–32 (ECF No. 69) (same).

Further, the Court disagrees with Plaintiffs' assertion that independent contractors are agency decision-makers under the Medicare Act. *See Calvary Hosp., Inc. v. Kennedy*, No. 1:23-CV-8479-GHW, 2025 WL 2106156, at \*8 (S.D.N.Y. July 25, 2025) (overruling objections to magistrate judge's order denying a motion to complete the administrative record and rejecting the argument that the applicable regulations consider CMS contractors to be "agency decision makers"); *see also MedEnvios Healthcare, Inc.*, 2024 WL 551837, at \*4 (accord) (recognizing that the administrative record does not "contain every document created by an agency and its contractors at any point during the course of the matters on appeal, regardless of whether they were part of the record on which the final agency decision was made"). But even assuming contractors are decision makers, Plaintiffs fail to argue that the documents should be admitted under the standards in § 405(g). Accordingly, Plaintiffs' Motions fail under the Medicare Act.

iii.   Plaintiffs' Motions fail under the APA.

a. *Plaintiffs have not shown that the administrative record is incomplete.*

To resolve a case brought under the APA, the agency must prepare a reviewable administrative record for the court. As discussed, the Parties disagree on whether 5 U.S.C. § 556 or 5 U.S.C. § 706 of the APA defines the complete administrative record in this case. The Court need not decide which section applies, because Plaintiffs have failed to rebut the presumption of the administrative regularity.

In all cases, the designation of the administrative record, like any established administrative procedure, is entitled to a strong presumption of administrative regularity. *See Nat'l Archives & Recs. Admin.*, 541 U.S. at 174; *City of Dallas, Tex.*, 2007 WL 3257188, at *8 (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). The Court must presume HHS properly designated the administrative record absent clear evidence to the contrary. *See City of Dallas, Tex.*, 2007 WL 3257188, at * 4.

Further, Plaintiffs must "provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record." *See City of Dallas, Tex.*, 2007 WL 3257188, at *8. And, as Plaintiffs acknowledge, they must do "more than just alleg[e] or theoriz[e] that the record is incomplete." Br. Mot. Compel 21 (ECF No. 69) (citing *Exxon Mobil*

22

*Corp. v. Mnuchin*, No. 3:17-CV-1930-B, 2018 WL 10396585, at \*3 (N.D. Tex. June 26, 2018), *objections overruled,* 2018 WL 4103724 (N.D. Tex. Aug. 29, 2018)).

Plaintiffs have not met their burden here. Plaintiffs do not argue that the agency prepared the record negligently or in bad faith. And Plaintiffs point to nothing in the record *itself* showing that the documents it seeks to admit were considered by agency decision makers—ALJs or the Medicare Appeal Council. *See, e.g.*, Mot. Compel (ECF No. 68); Br. Mot. Compel. (ECF No. 69). Showing the Court that certain purportedly relevant documents exist is not enough. *See City of Dallas, Tex.*, 2007 WL 3257188, at \*4; *Cf. BBX Cap. Corp.*, 2018 WL 6531601, at \*1 (to prove the administrative record is incomplete, a party must clearly set forth when, to whom, and under what context, the documents sought to be added were presented to the ALJs or Medicare Appeals Council). Further, virtually all of these documents were not created until after the agency decisions were rendered and relate to post-decision recalculations and accounting. And as Plaintiffs allege, in some cases, agency decisionmakers refused to consider Plaintiffs' arguments related to the method of statistical sampling. *See, e.g.*, Compl. ¶¶ 247, 249, 251 (ECF No. 1).

Because Plaintiffs have not shown the documents sought to be added were considered by agency decision makers, they "are outside the record, are legally irrelevant, and are therefore not discoverable." *See City of Dallas, Tex.*, 2007 WL 3257188, at \*4. Plaintiffs failed to present clear evidence showing that the agency did not properly designate the record. Thus, Plaintiffs failed to overcome the

presumption of regularity necessary to show that the administrative record is incomplete.

### b. *Supplementation of the record is not warranted.*

In their Motions and opening briefs, Plaintiffs do not argue that the record should be "supplemented," instead expressly asserting that the Motions should be analyzed under the standards relevant to "completion" of the record only. *See, e.g.*, Mot. Compel (ECF No. 68); Br. Mot. Compel. (ECF No. 69); *see also Calvary Hosp., Inc.*, 2025 WL 2106156, at *6 n. 2. Accordingly, the Court declines to order supplementation of the record where Plaintiffs have not requested or argued for such relief. Even so, supplementation is not warranted here.

Motions to supplement the record seek to establish circumstances warranting departure from the "record rule" discussed above. *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (noting that supplementation of the record is "the exception, not the rule") (citing *State of Delaware Dep't of Nat. Res. & Env't Control v. U.S. Army Corp. of Eng'rs*, 722 F. Supp. 2d 535, 542 (D. Del. 2010); *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006)).

Generally, supplementation is not allowed unless a plaintiff shows "unusual circumstances justifying a departure from the general presumption that review is limited to the record compiled by the agency." *See Texas*, 2021 WL 4552547, at *1–3 (citing *Medina County Environmental Action Ass'n*, 602 F.3d at 706).

Such unusual circumstances may be present when:

1. the agency deliberately or negligently excluded documents that may have been adverse to its decision,

2. the district court needed to supplement the record with "background information" to determine whether the agency considered all the relevant factors, or

3. the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* (also recognizing that the 8 "*Davis Mountain*" circumstances generally fit within the three categories above). But deviation from the record rule is limited, and a party must provide a strong showing "of bad faith or improper behavior on the part of agency decision makers" or that "the absence of administrative findings makes [supplementation] necessary in order to determine the reasons for the agency's choice." *See Calvary Hosp., Inc.*, 2025 WL 2106156, at *6.

Here, Plaintiffs do not argue or suggest that Defendant compiled the Administrative Record in bad faith or that any of the above circumstances are present in this case. *See, e.g.*, Mot. Compel (ECF No. 68); Br. Mot. Compel. (ECF No. 69).

To be sure, Plaintiffs also assert that the record should be "completed" with certain documents "necessary to resolve [their] constitutional claims." *See, e.g.*, Br. Mot. Compel 31–32 (ECF No. 69). And courts have noted that supplementation of the record may be warranted where a constitutional challenge is raised, and "there was such failure to explain administrative action as to frustrate judicial review" of those constitutional claims. *See Cavalry Hosp., Inc.*, 2025 WL 2106156, at * 6

25

(citing *Est. of Landers v. Leavitt*, 545 F.3d 98 (2d Cir. 2008), *as revised* (Jan. 15, 2009). Plaintiffs also cite *Illinois Council*, 529 U.S. at 23–24, to assert that the Court may "complete" the administrative record pursuant to the Court's authority to "resolve . . . constitutional contentions that the agency does not, or cannot decide." *See* Br. Mot. Compel 2 (ECF No. 69) (citing *Illinois Council*, 529 U.S. at 23–24). But *Illinois Council* did not discuss the Court's authority to "complete" the administrative record, only to supplement it. *See Illinois Council*, 529 U.S. at 23–24. And, in any event, Plaintiffs have not demonstrated that the materials it seeks to add to the record are "necessary" for the Court's evaluation of Plaintiffs' constitutional claims.

Further, there is no "bright line or categorical rule" requiring the Court to supplement the administrative record with evidence purportedly relevant to constitutional claims. *See Texas*, 2021 WL 4552547, at *3–4. Indeed, even when constitutional claims are presented, courts commonly refuse to include additional evidence when the "constitutional challenge to agency action required evaluating the *substance* of an agency's decision made on an administrative record." *Id.* (emphasis added)

Plaintiffs' briefing does not address whether their due process claims will require the Court to evaluate the substance of Defendant's decisions. But a review of Plaintiffs' pleadings suggests that Plaintiffs' claims would require such an evaluation. *See, e.g.*, Compl. 268–314 (ECF No. 1) (seeking an invalidation of the extrapolated overpayments for Counts 1-3, seeking to prevent recoupment of the

overpayments in Count 4, and seeking an accounting related to the payments made and interest accrued with respect to the overpayments). Nor have Plaintiffs shown that the administrative record is insufficient to shed light on the rationale for the Defendant's decision or that the Court's review of their due process claims would be frustrated without the inclusion of these documents. *See Cavalry Hosp., Inc.*, 2025 WL 2106156, at * 6 (citing *Leavitt*, 545 F.3d 98). Thus, Plaintiffs have not shown that they are entitled to supplement the record.

## Conclusion

For the reasons stated, Plaintiffs' Motions (ECF Nos. 68, 72, 76, 80, 88, 93, 98, 103) are **DENIED**.

In so ruling, the Court finds only that Plaintiffs have not shown that the materials sought to be added should be included in the administrative record on which their claims will be evaluated.

**SO ORDERED.** March 31, 2026.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE